UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JLI INVEST S.A., and LIN INVEST S.A., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-11474-ADB |
| | * | |
| COMPUTERSHARE TRUST COMPANY, | * | |
| N.A., et al. | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

On March 30, 2015, Plaintiffs JLI Invest S.A. ("JLI") and LIN Invest S.A. ("LIN")

(together, "Plaintiffs") filed a complaint against Computershare;[1] Indenix Pharmaceuticals, Inc.

("Idenix"), Merck & Co., Inc. and Imperial Blue Corporation (together, "Merck") (collectively,

"Defendants"). Currently pending before the Court are (1) Idenix and Merck's and (2)

Computershare's Motions to Dismiss Plaintiffs' claims on the statute of limitations grounds

[ECF Nos. 66, 70].[2] For the reasons stated below, Defendants' motions to dismiss [ECF Nos. 66,

---

[1] The Court will refer to Computer Share Trust Company, N.A,; Computershare Inc.; Computershare Investor Services, LLC as "Computershare" when discussing these three defendants collectively.

[2] With the Court's permission, the parties have bifurcated briefing on the motions to dismiss, addressing the statute of limitations issues first. Defendants have raised additional grounds to dismiss the action not addressed in the instant Memorandum and Order. With respect to the statute of limitations issues, Computershare adopts the entirety of Merck's argument (Section I of Merck's Memorandum of Law in Support of Its Motion to Dismiss the First Amended Complaint [ECF No. 67]. Accordingly, the Court will not distinguish between the arguments of the two motions to dismiss presently pending. Furthermore, the Court recognizes that Plaintiffs' Motion to Strike [ECF No. 82] the declaration and the accompanying exhibits [ECF No. 68] bears on some factual questions in this case, including the precise relationships between the various parties, however, the issues need not be resolved in discussing the statute of limitations issues. Lastly, the Court notes that Computershare filed two nearly identical motions to dismiss

70] are <u>GRANTED IN PART AND DENIED IN PART</u> only with respect to the statute of limitations issues.

## I.    BACKGROUND

### a.  Factual Background

For the purposes of the instant Memorandum and Order, only the background relevant to the statute of limitations issues is included. In deciding a motion to dismiss, the Court treats all well-pleaded facts in the operative complaint as true and makes all reasonable inferences in favor of the plaintiff. <u>United States ex rel. Hutcheson v. Blackstone Med., Inc.</u>, 647 F.3d 377, 383 (1st Cir. 2011). The following facts are taken from Plaintiffs' First Amended Complaint [ECF No. 10 ("Compl.")].

Idenix is a biopharmaceutical company engaged in the discovery and development of drugs for treatment of human viral diseases. Based on the Amended Complaint, Idenix is incorporated in Delaware with its principal place of business in Massachusetts. Merck is a pharmaceutical company incorporated in New Jersey with its principal place of business in New Jersey. In 2014, Merck acquired Idenix. Imperial Blue is a wholly owned subsidiary of Merck. Computershare Investor Services, LLC is a Delaware limited liability company, and Computershare Inc. is a Delaware corporation. Computershare Trust Company is a trust company formed under United States law and is a citizen of Massachusetts. It acted as Idenix's transfer agent during the relevant time periods. The Computershare defendants each have their principal place of business in Massachusetts.

Plaintiffs allege on information and belief that Equiserve acted as Idenix's transfer agent until 2005, at which point Equiserve was acquired by Computershare. After the 2005 acquisition,

---

[ECF Nos. 69, 70], the second one being a corrected version of the first. For the purposes of this Memorandum and Order, the Court will refer to the second motion only [ECF No. 70].

Computershare acted as Idenix's transfer agent, which included escheat services for Idenix's abandoned or unclaimed securities. The escheat services included finding lost shareholders, communicating with shareholders to prevent escheatment, and determining whether Idenix shares constituted unclaimed property. Plaintiffs were intended third-party beneficiaries of Computershare's contract with Idenix for these escheat services.

Plaintiffs JLI and LIN are Belgian entities formed by Dr. Gilles Gosselin and Dr. Jean Louis Imbach to hold their shares in Idenix. In 1997, Imbach and Gosselin were part of a research team that synthesized a new drug found to be active against Hepatitis B. Idenix was established in 1998 to help develop the drug. JLI owned 240,000 shares of Idenix and LIN owned 320,000 shares of Idenix. The Amended Complaint alleges that Idenix was aware of the relationship between Gosselin, Imbach, JLI, and LIN.

Under Delaware's state escheat statute, holders of unclaimed or abandoned property subject to Delaware's jurisdiction are required to report and remit such property to the State of Delaware. See Del. Code tit. 12, §§ 1199, 1201. In November 2008, Computershare, acting as agent of Idenix, reported to the state of Delaware that the 560,000 shares of Idenix owned by Plaintiffs has been abandoned and constituted unclaimed property. On January 2, 2009, JLI's and LIN's shares in Idenix were escheated to the state of Delaware. The Amended Complaint alleges that "the escheat of such shares was not required or permitted." Compl. ¶ 37.

Through 2009, Plaintiffs allege that Computershare and Idenix had Plaintiffs' proper mailing addresses and actually sent correspondence to Plaintiffs regarding their shares, which was never returned as undeliverable. Furthermore, Gosselin, on behalf of LIN, worked with Idenix at least through 2011 and had regular contact with it as part of this relationship. Imbach, on behalf of JLI, worked with Idenix at least through 2006 and had regular contact with it as part

of this relationship. Specifically, the Amended Complaint notes that LIN entered into a consulting agreement with Idenix that explicitly acknowledged LIN's shares in Idenix, was executed on January 1, 2007, and was terminated in March 2011. Similarly, JLI entered into a consulting agreement with Idenix that explicitly acknowledged JLI's shares in Idenix, was executed on January 1, 2003, and was terminated on December 31, 2006. Idenix made regular payments to both JLI and LIN under these agreements that they received and cashed. Furthermore, Plaintiffs received periodic account statements related to their shares that specifically noted "[n]o action on your part is required." Compl. ¶ 53.[3] Plaintiffs state that they were nonetheless never contacted about the possible escheatment of their shares, and that Defendants failed to undertake the required due diligence prior to escheatment. In short, Plaintiffs were completely blind-sided by the escheatment.

Sometime between March 23, 2009 and April 6, 2009, the state of Delaware liquidated Plaintiffs' shares for a total of $1,695,851.75. During that time, according to Plaintiffs, the market for Idenix stock was fairly illiquid and comprised of approximately 50 shareholders. Accordingly, they argue that the sale in 2009 did not represent the true value of their shares.

It was not until March 30, 2011, upon their own inquiry, that Plaintiffs were informed that their shares had been escheated. At the time, however, Computershare informed them that the shares has been escheated to the state of Massachusetts. On July 9, 2012, Computershare informed Plaintiffs that their shares had actually been escheated to Delaware. In September 2012, Plaintiffs began to pursue a claim with the Delaware Office of Unclaimed Property to recover their shares. Plaintiffs argue, however, that because of Computershare's and Idenix's "lack of responsiveness and assistance," they were not able to confirm that their shares had

---

[3] It is unclear based on the Amended Complaint at which point these periodic account statements stopped, if at all.

actually been escheated to Delaware until May 2014, and only learned of the liquidation in October 2014. Compl. ¶ 62. In 2014, Merck acquired Idenix at $24.50 per share. Plaintiffs aver that they would have participated in the tender offer had their shares not been escheated. Under the Merck tender offer, Plaintiffs' total shares would have been worth over $12 million. On June 8, 2015, Plaintiffs received a check from Delaware in the amount of $1,695,851.75, equal to the amount their shares were sold for.

### b. Procedural Background Relevant to Statute of Limitations Issues

Plaintiffs initiated this lawsuit on March 30, 2015. They filed an Amended Complaint on July 23, 2015. [ECF No. 10]. The Amended Complaint alleges the following causes of action: negligence (Count I); Massachusetts Chapter 93A violation (II); conversion (III); breach of contract (IV); breach of covenant of good faith and fair dealing (V); breach of fiduciary duty (VI); violations of Massachusetts and Delaware state securities law (VIII); § 1983 violation (IX); and negligent misrepresentation (X).[4] Throughout, for ease of reference, Counts I, III, VI, VIII and X will be collectively referred to as the "tort-based claims" and Counts IV and V as the "contract-based claims."

Count I asserts a negligence claim against all Defendants, on the grounds that Computershare and Idenix breached their duties of care to Plaintiff shareholders by, *inter alia*: (1) wrongfully escheating Plaintiffs' shares; (2) failing to conduct due diligence prior to the escheat, in violation of state and federal law, including 17 C.F.R. § 240.17Ad-17; (3) failing to contact Plaintiffs before escheating their shares, even though Defendants knew how to contact Plaintiffs; (4) in Computershare's case, failing to inquire with Idenix regarding Plaintiffs' contact information and their relationship with Idenix, and in Idenix's case, failing to inform

---

[4] Count VII (violation of federal securities law) was dismissed by agreement of the parties. See [ECF No. 64].

Computershare of such contact information and relationships; (5) failing to provide sufficient information to the State of Delaware to enable Delaware to return Plaintiffs' shares to them; (6) failing to notify Plaintiffs that their shares would be or had been escheated; (7) misrepresenting to Plaintiffs that their shares had been escheated to Massachusetts, which caused a lengthy delay in Plaintiffs' efforts to recover their shares; and (8) failing to disclose to Plaintiffs in any written document that their shares could be subject to escheat under certain circumstances, that the relevant state law on such issues had changed, or that the changes to the law would result in the automatic escheat of Plaintiffs' shares unless immediate action was taken. Plaintiffs further contend that Merck, as successor in interest to Idenix, is liable for Idenix's negligent acts and omissions. Plaintiffs allege that as a result of the Defendants' negligence, Plaintiffs lost over $12 million.

Count II alleges that Defendants violated Massachusetts General Laws Chapter 93A, § 2 by willingly, knowingly, and recklessly engaging in unfair and/or deceptive acts or practices. The factual allegations supporting the Chapter 93A claim in Count II are similar to those alleged in Count I.

Count III alleges that all Defendants are liable for conversion. In Count IV, Plaintiffs assert a claim for breach of contract, on the grounds that they were the third-party beneficiaries of the contract between Computershare and Idenix, including any indemnity provisions therein. Plaintiffs contend that both parties breached their respective obligations under the contract, and that Plaintiffs were damaged as a result. Similarly, Count V alleges that the Defendants breached the implied covenant of good faith and fair dealing associated with that contract, in an effort to deprive Plaintiffs of the benefit of the contract.

Count VI alleges that Idenix and Merck breached their fiduciary duties to the Plaintiffs, to safeguard and protect their shares, to maintain accurate books and records, to avoid making untrue statements of material fact or material omissions, and to refrain from engaging in any practice or course of business that would operate as a deceit. Plaintiffs contend that Idenix knew or should have known that Plaintiffs had not, in fact, abandoned their shares, based on its regular contacts with the Plaintiffs. They also contend that Idenix and its officers failed to inform Plaintiffs of material, non-public information, namely that the company was on the brink of an acquisition, and unfairly profited from the sale and liquidation of Plaintiffs' shares prior to the Merck tender offer.

In Count VIII, Plaintiffs allege that the Defendants violated their statutory duties under Massachusetts and Delaware state securities laws, to ensure that securities were not wrongly transferred from one person to another. See Mass. Gen. Laws ch. 106, §§ 8-404, 8-405; Del. Code tit. 6, §§ 8-404, 8-405.

Count IX alleges that all Defendants violated 42 U.S.C. § 1983, insofar as Computershare and Idenix "had a symbiotic and intertwined relationship with Delaware," such that Delaware, Computershare, and Idenix "jointly participated in the escheat" of Plaintiffs' shares. See Compl. ¶¶ 144–59. Accordingly, Plaintiffs contend that Defendants' wrongful acts were taken under "color of state law," subjecting them to liability under 42 U.S.C. § 1983.

Finally, Count X alleges that Defendants are liable for negligent misrepresentation, based on Computershare's erroneous statement that Plaintiffs' shares had been escheated to Massachusetts. Plaintiffs also allege that Computershare negligently and recklessly concealed material facts which they were under a legal duty to communicate. Plaintiffs contend that they

relied on these misstatements and omissions to their detriment, and that Defendants are liable for the resulting $12 million in damages.

As relief, Plaintiffs request compensatory, multiple, and punitive damages, attorneys' fees, costs, and pre and post-judgment interest.

On September 29, 2016, Idenix and Merck filed a Motion to Dismiss for Failure to State a Claim [ECF No. 66], and an accompanying Memorandum of Law in Support [ECF No. 67] and Declaration [ECF No. 68].[5] On September 29, 2016, Computershare also filed a Motion to Dismiss [ECF No. 70]. On October 31, 2016, Plaintiffs opposed the motions with respect to the statute of limitations issues [ECF No. 72]. On November 7, 2016, each set of Defendants, Idenix/Merck and Computershare, replied. [ECF Nos. 78, 79]. Plaintiffs filed a surreply with the Court's permission [ECF No. 84].

## II. LEGAL STANDARD

"Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" <u>Santana-Castro v. Toledo-Dávila</u>, 579 F.3d 109, 113–14 (1st Cir. 2009) (alteration in original) (quoting <u>Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.</u>, 524 F.3d 315, 320 (1st Cir.2008)) (internal quotation marks omitted). On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), the Court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in favor of the plaintiff. <u>Hutcheson</u>, 647 F.3d at 383. A dismissal for timeliness is warranted under Rule 12(b)(6) when "the pleader's allegations leave

---

[5] On November 14, 2016, Plaintiffs moved to strike the declaration [ECF No. 82] on the grounds that the documents are unauthenticated and cannot be properly considered at the motion to dismiss stage. Idenix opposes the motion [ECF No. 86]. In this Memorandum and Order, the Court does not decide Plaintiffs' Motion to Strike and does not rely on the declaration.

no doubt that an asserted claim is time-barred." <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir. 1998) (citations omitted).

## III.    DISCUSSION

In short, Defendants argue that all of Plaintiffs' causes of action, except negligent misrepresentation,[6] accrued on January 2, 2009 (the date of the escheatment) are not subject to tolling under the discovery rule, and are therefore time-barred. Plaintiffs, on the other hand, argue that the statute of limitations was not triggered until they learned in October 2014 that their shares had been liquidated, which is when they discovered that they had been harmed by the Defendants' wrongful conduct.

### a.    Choice of law analysis for Plaintiffs' contract-based and tort-based claims.

The Court must first determine whether the laws of Massachusetts or Delaware provide the statute of limitations for each state law cause of action. In making this determination, the Court applies the choice of law rules of the forum state, in this case, Massachusetts. <u>See, e.g.</u>, <u>Millipore Corp. v. Travelers Indemnity Co.</u>, 115 F.3d 21, 29 (1st Cir. 1997). "Massachusetts state courts apply 'a functional choice of law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole.'" <u>Reicher v. Berkshire Life Ins. Co. of Am.</u>, 360 F.3d 1, 5 (1st Cir. 2004) (quoting <u>Bushkin Assocs., Inc. v. Raytheon Co.</u>, 473 N.E.2d 662, 668 (Mass. 1985)). Courts consider the following factors in applying this approach:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of

---

[6] The Court notes that the negligent misrepresentation claim accrued on or after March 30, 2011, the date the representation was made. Although the Court is referring to the "tort-based claims" collectively, it will note when the negligent misrepresentation claim requires a separate discussion.

law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Id. (quoting Bushkin Assocs., Inc., 473 N.E.2d at 669). "Under this functional approach, a Massachusetts court 'generally will apply its own statute of limitations to permit a claim unless: (a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.'" In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig., 76 F. Supp. 3d 294, 305 (D. Mass. 2015) (quoting Nierman v. Hyatt Corp., 808 N.E.2d 290, 292 & n.7 (Mass. 2004)).

> i.    *Massachusetts law applies to Plaintiffs' contract-based claims and 93A claim.*

Parties agree that Massachusetts law applies to Plaintiffs' contract-based claims, breach of contract (Count IV) and breach of implied covenant of good faith and fair dealing (Count V). Under Massachusetts law, the statute of limitations for contract claims is six years. See Mass. Gen. Law. Ch. 260, § 2. With respect to Plaintiffs' 93A claim, the parties agree that Massachusetts law would provide the statute of limitations period.

> ii.   *The Court applies Delaware law applies to Plaintiffs' tort-based claims.*

Plaintiffs argue that Massachusetts law provides the applicable statute of limitations period for the tort-based claims because the majority of factors weigh in its favor. Namely, two of the Defendants are residents of Massachusetts and the wrongful conduct in this case occurred in Massachusetts. Defendants, on the other hand, argue that Delaware law applies to the tort-based claims (Counts I, III, VI, VIII, and X) because the causes of action involve Delaware companies and an alleged wrongful escheatment under Delaware law.

In this case, many of the acts on which the claims are based took place in Massachusetts and were undertaken by Massachusetts residents, which implicate strong local interests. The tort-based claims, however, with the exception of negligent misrepresentation, are based on the allegedly wrongful escheatment of Plaintiffs' shares under Delaware Escheats Law. Thus, this case is distinguishable from many other cases involving tort-based claims because the tortious actions alleged in this case are inextricably tied to a particular state's law in that it is the Defendants' supposed compliance with the Delaware Escheats Law that gave rise to all of the causes of action in this case. Moreover, the shares were escheated to the state of Delaware, which has already given Plaintiffs some payment in connection with the escheatment, and ultimately liquidated in the state of Delaware, all of which gives Delaware a very significant interest in the resolution of relevant issues, including what qualifies as a proper escheatment under the Delaware Escheats law and whether that is constitutional. Moreover, Idenix is formed under the laws of Delaware. To the extent that the tort-based claims, like breach of fiduciary duty and conversion, involve the internal affairs of a corporation, "the law of the State of incorporation governs claims concerning the internal affairs of a corporation." Harrison v. NetCentric Corp., 744 N.E.2d 622, 628–29 (Mass. 2001); see also Natale v. Espy Corp., 2 F. Supp. 3d 93, 102 (D. Mass. 2014) ("The general choice-of-law rules in Massachusetts may be supplanted, however, by the 'internal affairs doctrine.'"). The Court notes, however, that Massachusetts law does not provide a longer statute of limitations for tort claims than Delaware law. In fact, the Court observes that the outcome of the statute of limitations inquiry for Plaintiffs' tort-based claims would likely be the same regardless of whether Delaware or Massachusetts law applied. Kaufman v. Richmond, 811 N.E.2d 987, 989 (Mass. 2004) ("Only actual conflicts between the laws of different jurisdictions must be resolved" and the "analysis is

unnecessary when that choice will not affect the outcome of the case."). Accordingly, the Court applies Delaware law to Plaintiffs' tort-based claims for the purpose of this Memorandum and Order.

### b. The applicable statute of limitations for each state law cause of action

Under Delaware (and Massachusetts) law, tort actions, including the state securities law claims, have a three-year limitations period. Del. Code tit. 10, § 8106(a); Mass. Gen. Laws ch. 260, § 2A. With respect to the securities law claims, Massachusetts General Laws Chapter 260, § 2A provides the statute of limitation for statutory violations based in tort. See Prescott v. Morton Int'l, Inc., 769 F. Supp. 404, 406 (D. Mass. 1990). Delaware securities law does not provide a statute of limitations for claims under its state securities law, §§ 8-804 and 8-805, but both parties seem to agree that the state securities law violations arise out of tort, and thus the Court applies Delaware's statute of limitations for tort claims to Plaintiffs' claim under Delaware securities law. See Mastellone v. Argo Oil Corp., 82 A.2d 379, 384 (Del. 1951) (applying three-year statute of limitations to securities conversion claim).

If the Chapter 93A claim is viable, which is not addressed in this Memorandum, it has a limitations period of four years. See Mass. Gen. Laws Ch. 260, § 5A. The parties do not dispute that Massachusetts law provides the statute of limitations for the contract-based claims, which is six years. See Mass. Gen. Laws ch. 260, § 2.

### c. Under the general rules of accrual in Massachusetts and Delaware, the escheatment, rather than liquidation, is the injury for statute of limitations purposes.[7]

The Court must next determine when the causes of action accrued, or in other words, whether the injury underlying Plaintiffs' causes of action was the escheatment or the liquidation

---

[7] This section applies to all claims, except the § 1983 claim, which will be discussed in a later section.

of Plaintiffs' shares. Plaintiffs argue that the causes of action did not accrue until they learned of the appreciable harm (the liquidation of their shares) that resulted from Defendants' wrongful conduct (the escheatment). Defendants argue that Plaintiffs' conception of harm confuses injury and damages and that because the injury was the escheatment as alleged in the Amended Complaint, the subsequent liquidation of the shares may be relevant to assessing damages but not to the accrual date for statute of limitations purposes.

Under Massachusetts law, "[c]auses of action in contract and tort generally accrue at the time of breach or injury." Arcieri v. N.Y. Life Ins. Co., 63 F. Supp. 3d 159, 164 (D. Mass. 2014) (citing Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 560 N.E.2d 122 (Mass. App. Ct. 1990)). Under Delaware law, "[f]or tort claims, a cause of action accrues at the time of the injury." Krahmer v. Christie's Inc., 903 A.2d 773, 778 (Del. Ch. 2006); see also Niehoff v. Maynard, 299 F.3d 41, 48 (1st Cir. 2002) (Under Delaware law, "[a]bsent concealment or fraud, a cause of action [for breach of fiduciary duty and breach of contract] accrues at the moment of the wrongful act, even if the plaintiffs are ignorant of the wrong."). Despite this general rule, as will be discussed below, under both Massachusetts and Delaware law, the date of accrual can be extended by the "discovery rule."

In this case, the injury and breach that triggered the statute of limitations under both Massachusetts and Delaware law was the Defendants' allegedly wrongful escheatment of Plaintiffs' shares on January 2, 2009. A wrongful escheatment gives rise to causes of action against private parties. See A.W. Fin. Servs., S.A. v. Empire Res., Inc., 981 A.2d 1114, 1120 (Del. 2009) (Under Delaware law, "[c]laims for wrongful escheatment brought by a property owner against the State of Delaware based on common law causes of action are superseded by the Escheat Statute and, therefore, are not available. Not superseded, however, are common law

or statutory causes of action brought against parties, other than the State, that are involved in an escheat transaction."); see also Sotos v. Computershare Trust Co., N.A., No. 15-818, 2016 WL 447425, at *4 (D. Conn. Feb. 3, 2016) (causes of action based on wrongful escheatment under Connecticut law); Azure Ltd. v. I-Flow Corp., 210 P.3d 1110, 1111 (Cal. 2009) (causes of action for wrongful escheatment under California law). The Amended Complaint itself makes it clear that the injury complained of in this case is the wrongful escheatment which resulted in a breach that gave rise to the contract-based claims. For example, Plaintiffs allege that "[b]y wrongfully escheating Plaintiffs' shares . . . Computershare and Idenix breached the implied covenant of good faith and fair dealing, resulting in harm to Plaintiffs." Compl. ¶ 116. Plaintiffs also state that "[b]y Computershare's acts and omissions set forth herein, including but not limited to its wrongful escheatment . . . Computershare breached its duties under the contract with Idenix." Id. ¶ 109. The Amended Complaint makes similar allegations, relying on the wrongful escheatment, for the remaining claims. For example, with respect to the negligence claim, "Computershare's and Idenix's actions in escheating Plaintiffs' shares to Delaware did not meet reasonable commercial standards of practice in the securities industry." Id. ¶ 88. Also, with respect to the conversion claim, Plaintiffs allege that "[i]n wrongfully escheating the shares, Computershare and Idenix exercised ownership, control, and/or dominion over Plaintiffs' property, to which they had no right of possession, thereby depriving Plaintiffs of their valuable property." Id. ¶ 102; see also Leal v. Computershare, No. 10-00033, 2010 WL 4038609, at *6 n.3 (D. Nev. Sept. 28, 2010) ("Leal's alleged injury, however, was not California's liquidation of her shares, but Colgate-Palmolive's escheatment of those shares to California. While California's liquidation may be relevant to the damages she may recover for her injury, her alleged injury remains the escheatment of her shares.").

Plaintiffs argue that "Massachusetts courts are unequivocal: the event that triggers the statute of limitations is the discovery by a plaintiff that it has sustained 'appreciable harm,' not the mere discovery of a defendant's wrongful conduct." This argument, however, conflates the date of the injury with the discovery rule, which can delay the accrual date for statute of limitations purposes under certain circumstances, but does not determine when an injury occurred. Further, crediting Plaintiffs' analysis would require this Court to conclude that wrongful escheatment itself is not an injury or a harm. Regardless of whether a wrongful escheatment inevitably constitutes a harm, Plaintiffs' Amended Complaint makes clear that the injury they allegedly suffered was the wrongful escheatment, which ultimately led to the wrongful liquidation of their shares at an undervalued price. Even a case cited by Plaintiffs notes that "appreciable harm" occurs even if "the full extent and nature of that harm has not been and cannot be established immediately." Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple, P.C., 475 N.E.2d 390, 392 (1985). Harm or injury for statute of limitations purposes is distinct from damages for relief purposes. Therefore, it is the escheatment itself that sets the date that the harm occurred and generally establishes when the cause of action accrued.

In this case, the wrongful escheatment that triggered the statute of limitations for most of the claims under both Delaware and Massachusetts law happened on January 2, 2009. The one exception is Plaintiffs' claim for negligent representation which is based on representations about the escheatment made on March 30, 2011. Thus, the negligent misrepresentation claim did not accrue until March 30, 2011 at the earliest.

Accordingly, unless the discovery rule applies (discussed below), all of Plaintiffs' state law claims are time-barred. The complaint was filed on March 30, 2015. To be timely, the tort-based claims, except negligent misrepresentation, would have had to be filed by January 2012;

the negligent misrepresentation claim by March 2014; the contract-based claims by January 2015; and the 93A claim by January 2013. Even if liquidation provided the date of accrual, all claims, except the contract-based ones, would still be time-barred.

**d. The Court cannot determine at this stage whether the discovery rule under Massachusetts law applies to the contract-based claims and 93A claim.**

As the parties acknowledge, Massachusetts law provides the statute of limitations for the contract-based claims and the 93A claim. Massachusetts has a discovery rule that tolls the statute of limitations under certain circumstances. The discovery rule applies only when the injury was inherently unknowable. See Power Control Devices, Inc. v. Orchid Techs. Eng'g & Consulting, Inc., 968 F. Supp. 2d 435, 442 (D. Mass. 2013) (Under Massachusetts law, "[i]n order for the statute of limitations to be tolled under the discovery rule, the basis for the action must have been 'inherently unknowable' to the plaintiff at the time of the injury."). "The factual basis for a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence." Gonzalez v. United States, 284 F.3d 281, 288–89 (1st Cir. 2002). The standard is an objective one. Id. at 288–89. "Under the Massachusetts discovery rule, an 'inherently unknowable' cause of action accrues only when the injured party knew or should have known of the facts underlying the claim." Shane v. Shane, 891 F.2d 976, 986 (1st Cir. 1989) (quoting Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 130 (1st Cir. 1987)).

Thus, for purposes of this case, the discovery rule only tolls the statute of limitations until a plaintiff is on inquiry notice. See Epstein v. C.R. Bard, Inc., 460 F.3d 183, 188 (1st Cir. 2006) ("[t]he discovery rule does not require that a plaintiff know the specific details pertaining to an alleged harm, but instead it imposes a 'duty to investigate' on a plaintiff who has cause for concern." (quoting Doucette v. Handy & Harmon, 625 N.E.2d 571, 573 (Mass. App. Ct. 1994))). Here, if the discovery rule tolled the statute of limitations for the contract-based claims and the

93A claim until March 30, 2011, the date Plaintiffs admit they learned of the escheatment, the claims might not be time-barred.

To make this determination, "Massachusetts discovery rules require an individualized fact-intensive inquiry." In re Fresenius Granuflo, 76 F. Supp. 3d at 309. "Application of the discovery rule ordinarily involves questions of fact and therefore 'in most instances will be decided by the trier of fact.'" Genereux v. Am. Beryllia Corp., 577 F.3d 350, 360 (1st Cir. 2009) (quoting In re Mass. Diet Drug Litig., 338 F. Supp. 2d 198, 204 (D. Mass. 2004) (further internal quotation marks omitted)).

The Court finds that that it is premature at this stage to determine whether the discovery rule applies without the benefit of relevant discovery. Here, Plaintiffs allege that they received explicit instructions from Defendants that shareholders need not take any affirmative actions regarding their shares. There are no additional facts about the circumstances of the holding of the shares from which the Court can infer whether the escheatment was inherently knowable or unknowable around January 2, 2009 or, if not knowable then, when it might have become knowable. Defendants argue only that Plaintiffs could have inquired. But, given the facts available, the Court could reasonably infer that there were no circumstances that would have rationally caused Plaintiffs to think to inquire into the status of their shares. Cf. In re Dreliouch, 359 B.R. 9, 16 (Bankr. D. Mass. 2006) (holding that fraudulent creation of deed was inherently unknowable because, after checking once, the plaintiff "had no further reason to continually be running to the registry of deeds to check for the alleged fraud after that point"). Under Massachusetts law, at this stage, the Court finds it inappropriate to hold that the escheatment was inherently knowable where Plaintiffs may have had no other way of knowing besides starting an inquiry that they might have had no reason to undertake. Accordingly, drawing reasonable

inferences in favor of the Plaintiffs, it is not possible for the Court to conclude that the

escheatment was inherently knowable to Plaintiffs under Massachusetts law on January 2, 2009.

On summary judgment, for the contract-based claims and the 93A claim, the parties may develop

the facts or provide case law concerning whether and under what circumstances the escheatment

of shares is inherently unknowable or not.

### e. Plaintiffs' tort-based claims are time-barred even if the Delaware discovery rule applies.[8]

Delaware law, which the Court applies to the tort-based claims, has a discovery rule that

can toll the statute of limitations if the injury was inherently unknowable and the plaintiff was

blamelessly ignorant of the injury. See TL of Florida, Inc. v. Terex Corp., 54 F. Supp. 3d 320,

328 (D. Del. 2014) ("Under the [Delaware] 'discovery rule' the statute of limitations is tolled

when the injury is 'inherently unknowable and the claimant is blamelessly ignorant of the

wrongful act and the injury complained of.'" (quoting Wal-Mart Stores, Inc. v. AIG Life Ins.

Co., 860 A.2d 312, 319 (Del. 2004))). Even if the Delaware discovery rule applied, however, it

would only toll or delay the accrual date of the statute of limitations until Plaintiffs were put on

inquiry notice of the injury, here the escheatment, which occurred no later than March 30, 2011.

See Wal-Mart Stores, Inc., 860 A.2d at 319 (accrual under the Delaware discovery rule begins

when "'the existence of facts sufficient to put a person of ordinary intelligence and prudence on

inquiry which, if pursued, would lead to the discovery' of such facts." (quoting Coleman v.

Pricewaterhousecoopers, LLC, 854 A.2d 838, 842 (Del. 2004))).

The fact that Plaintiffs believed that their shares were escheated to Massachusetts, rather

than Delaware, does not change the fact that they knew by March 30, 2011 that their shares had

---

[8] The analysis in this section would be similar for a violation of the Massachusetts state securities law, and thus the Court does not discuss is separately.

been escheated. It is possible, although the Court cannot conclude so on these facts, that Plaintiffs were even on inquiry notice before March 30, 2011. Accordingly, making all reasonable inferences in favor of Plaintiffs at this stage and based on the record currently before the Court, the accrual of the statute of limitations for Plaintiffs' tort-based claims could not be delayed beyond March 30, 2011, the date Plaintiffs learned of the escheatment. Because tort claims under Delaware law have a three-year statute of limitations, Plaintiffs' tort-based claims had to be filed by March 30, 2014 to be timely even if the discovery rule applied. Because the action was not initiated until March 2015, Plaintiffs' tort-based claims, with the exception of negligent misrepresentation, are time-barred.

Plaintiffs' negligent misrepresentation claim (Count X) is based on the allegation that the Defendants provided misinformation in March 2011 about the state to which their shares were escheated. The accrual date is different, but the same analysis involving Delaware's discovery rule applies. At this stage and on these facts, however, the Court cannot determine whether Delaware's discovery rule might apply to save Plaintiffs' negligent misrepresentation claim. Therefore, the claim will not be dismissed at this time.

> **f. The § 1983 claim is time-barred.**

The Court addresses the statute of limitations inquiry for the § 1983 claim (Count IX) separately because its accrual is governed by federal, rather than state, law. See Corliss v. City of Fall River, 397 F. Supp. 2d 260, 264 (D. Mass. 2005). Here, Plaintiffs allege that Defendants, to the extent Delaware law required escheatment of Plaintiffs' shares, acted under color of state law and "effected a deprivation and taking" of Plaintiffs' property without due process and also violated the Friendship, Establishment and Navigation Treaty between the United States and Belgium. Compl. ¶¶ 153–154. Generally, a § 1983 claim accrues "when the plaintiff knows or

has reason to know of the injury which is the basis of the action." <u>Corliss</u>, 397 F. Supp. 2d at 264 (quoting <u>Street v. Vose</u>, 936 F.2d 38, 40 (1st Cir. 1991)). "A claimant is deemed to 'know' or 'learn' of a discriminatory act at the time of the act itself and not at the point that the harmful consequences are felt." <u>Marrero-Gutierrez v. Molina</u>, 491 F.3d 1, 5–6 (1st Cir. 2007). Thus, in the takings context, the First Circuit "ha[s] long held that '[i]n a § 1983 case concerning the unlawful taking of property, the statute of limitations begins to run on the date of the wrongful appropriation,'" and not on the date that the plaintiff learned of the defendants' wrongful motivations. <u>Vistamar, Inc. v. Fagundo-Fagundo</u>, 430 F.3d 66, 70 (1st Cir. 2005) (quoting <u>Altair Corp. v. Pesquera de Busquets</u>, 769 F.2d 30, 32 (1st Cir. 1985)).

In this case, the wrongful appropriation took place on the day that Defendants escheated Plaintiffs' shares, or January 2, 2009. Given that the nature of shares is inherently different from the nature of real property, however, it is unclear on these facts whether Plaintiffs had reason to know of the escheatment on January 2, 2009. It is clear, however, that Plaintiffs knew of the injury (the escheatment) by March 30, 2011. This determination is not altered by the fact that Plaintiffs did not know at that time whether the shares were escheated to Delaware or Massachusetts. For accrual of a § 1983 claim to be triggered, "[t]he knowledge required is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred." <u>Williams v. City of Brockton</u>, 59 F. Supp. 3d 228, 240 (D. Mass. 2014) (quoting <u>Tedeschi v. Reardon</u>, 5 F. Supp. 2d 40, 44 (D. Mass. 1998)).

A § 1983 claim "borrows the appropriate state law governing limitations unless contrary to federal law," <u>Poy v. Boutselis</u>, 352 F.3d 479, 483 (1st Cir. 2003), from "the state where the action was brought," <u>Greenwood ex rel. Estate of Greenwood v. N.H. Pub. Utils. Comm'n</u>, 527 F.3d 8, 13 (1st Cir. 2008). Thus, the three-year Massachusetts statute of limitations for personal

injury claims applies. See McLaughlin v. Boston Ret. Bd., 146 F. Supp. 3d 283, 288 (D. Mass. 2015), aff'd sub nom. McLaughlin v. Boston Ret. Bd. et al., No. 15-2452 (1st Cir. Jul. 27, 2016) (order granting summary disposition and affirming); see also Mass. Gen. Law. Ch. 260, § 2A. Making all reasonable inferences in favor of the Plaintiffs at this stage, the § 1983 claim must have been filed within three years of March 30, 2011, or March 30, 2014. Because the instant action was initiated in March 2015, Plaintiffs' § 1983 claim is time-barred.

## IV.    CONCLUSION

For the foregoing reason, Defendants' Motions to Dismiss on statute of limitations grounds [ECF Nos. 66, 70] are GRANTED IN PART AND DENIED IN PART with respect to the statute of limitations issues. Plaintiffs' claims for negligence (Count I), conversion (Count III), breach of fiduciary duty (Count VI), violations of state securities laws (Count VIII), and violation of § 1983 (Count IX) are time-barred and therefore DISMISSED without prejudice. Plaintiffs may seek to amend the Complaint if discovery reveals alternative grounds for tolling the statute of limitations. Plaintiffs' claims for breach of contract (Count IV), breach of the implied covenant of good faith and fair dealing (Count V), Chapter 93A (Count II), and negligent misrepresentation (Count X) are not dismissed at this stage, although Defendants may raise the defense again at a later stage once the facts have been sufficiently developed. The motions to dismiss [ECF Nos. 66, 70] with respect to the non-statute of limitations issues remain under advisement.

**SO ORDERED.**

Dated: January 23, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE